**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STANLEY F. FROMPOVICZ, JR.,<br>Plaintiff, | CIVIL ACTION |
| v. | |
| PTS REALTY HOLDINGS, LLC,<br>Defendant. | NO.  18-261 |

### MEMORANDUM OPINION

Plaintiff Stanley F. Frompovicz, Jr. develops spring-water land and supply sites.  He asserts various tortious, contractual, and quasi-contractual claims against Defendant PTS Realty Holdings, LLC for an alleged misrepresentation it made upon execution of a contract. Specifically, Plaintiff alleges that, as he built a spring water bottling facility for Defendant, it failed to hire a professional engineer as required under their contract.  Without an engineer's oversight, Plaintiff avers that he incurred excessive costs when building the facility.  After Plaintiff and Defendant arbitrated their dispute related to this contract, an arbitration award was issued in Defendant's favor.

Defendant has moved for summary judgment on all of Plaintiff's claims, contending that the arbitration resolved, or could have resolved, the issues in Plaintiff's Complaint.  For the reasons that follow, Defendant's motion shall be granted, and Plaintiff's Complaint will be dismissed with prejudice on res judicata grounds.  Plaintiff shall furthermore be ordered to show cause why sanctions should not issue for filing this duplicative lawsuit.

## I.    FACTUAL BACKGROUND[1]

The crux of this dispute centers on a contract that governed the construction of a facility

---

[1] Unless otherwise noted, the following facts are not disputed and are derived, in part, from a certified arbitration award.  Plaintiff has neither disputed the authenticity of the arbitration award nor the accuracy of its factual recitation.

in Brandonville, Pennsylvania.  Plaintiff owned land that he intended to sell to Defendant after completing construction of the spring water bottling facility (the "Brandonville Plant"). However, besides developing spring water sites, Plaintiff purportedly had no experience in constructing any facilities.  Defendant, by contrast, was allegedly a business familiar with the minutiae of realty and property development.  The gravamen of Plaintiff's Complaint is that Defendant fraudulently induced the inexperienced Plaintiff to enter into the Brandonville Plant contract (the "Brandonville Contract") whereby Plaintiff performed construction work without sufficient oversight.

Signed in June 2011, the Brandonville Contract provided for the arbitration of any "Claim," which was specifically defined to include "other disputes and matters in question between [Plaintiff] and [Defendant] arising out of or relating to the Contract."  The Contract furthermore designated Charles Yourshaw of Yourshaw Engineering, Inc. as "Engineer" for the construction project.  Plaintiff contends that Defendant was contractually required to enlist Yourshaw to design, monitor, and oversee the Brandonville Plant construction.  Defendant did not do so, but, according to Plaintiff, assured him that a professional engineer would oversee the construction.  Because no professional engineer was actually employed to monitor the construction process, Plaintiff avers that he incurred significant costs due to his inexperience.

Eventually, the parties had a dispute about defects relating to Plaintiff's construction work for the Brandonville Plant.  Defendant accordingly compelled arbitration, though Plaintiff attempted to stay the arbitration in state court.  Plaintiff's petition to stay the arbitration was denied.

The arbitration hearings took place on May 20, 2016 and September 20, 2016.  Defendant sought compensatory damages for the various construction defects.  Plaintiff, on the other hand,

submitted no claims for the arbitrator's review. The arbitrator found, among other things, that Plaintiff violated the Brandonville Contract by "performing defective installation of facility water pipes, drain pipes, plumbing and heating. . . ." Consequently, the arbitrator concluded that Plaintiff was liable for over $1 million. Defendant then sought judicial confirmation of the arbitration award in state court. To date, the arbitration award has not yet been confirmed.

Despite failing to assert any claims during the arbitration, Plaintiff now presses eight claims: fraudulent inducement (Count I); promissory estoppel (Count II); fraud (Count III); negligent misrepresentation (Count IV); fraudulent concealment (Count V); unjust enrichment (Count VI); intentional infliction of emotional distress (Count VII); and breach of the covenant of good faith and fair dealing (Count VIII). Each Count is predicated on Defendant's alleged promise to enlist the services of a professional engineer and its failure to do so.

Defendant, in response, initially moved to dismiss all claims under Rule 12(b)(6) on, *inter alia*, res judicata grounds. However, because Defendant sought to introduce facts from the arbitration award itself, its motion to dismiss was converted into one for summary judgment. *See Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). The parties then submitted supplemental briefing and additional materials relevant only to the res judicata defense.

## II.     LEGAL STANDARD

"[S]ummary judgment is appropriate where there is 'no genuine dispute of material fact' and the moving party is 'entitled to judgment as a matter of law.'" *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (quoting Fed. R. Civ. P. 56(c)). "The substantive law identifies which facts are material." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could

rationally find in favor of the non-moving party in light of his burden of proof." *Id.* at 256

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986)); *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248-52 (1986).

## III.   DISCUSSION

### a.   Res Judicata as Applied to Arbitration Proceedings

Defendant has moved to dismiss all of Plaintiff's claims on res judicata grounds,

contending that they were already litigated, or could have been litigated, in the arbitral forum.

Pennsylvania law provides that the term "res judicata" "encompasses two related, yet distinct

principles: technical res judicata and collateral estoppel."[2] *J.S. v. Bethlehem Area Sch. Dist.*, 794

A.2d 936, 939 (Pa. Commw. 2002).  Application of either doctrine requires a "final judgment on

the merits." *Id.*; *Witkowski v. Welch*, 173 F.3d 192, 198 (3d Cir. 1999).

In Pennsylvania, "arbitration proceedings and their findings are considered final

judgments for the purposes of collateral estoppel," *Id.* at 199, and technical res judicata.  *See*

Restatement (Second) of Judgments § 84(1) ("[A] valid and final award by arbitration has

the same effects under the rules of res judicata, subject to the same exceptions and qualifications,

as a judgment of a court.").  Here, although the arbitration award is yet to be confirmed, it is

undisputed that Plaintiff did not appeal it.  The arbitration award issued in Defendant's favor is

therefore a final judgment that may be used for purposes of general res judicata.  *See Dyer v.*

*Travelers*, 572 A.2d 762, 764 (Pa. Super. 1990) ("An arbitration award from which no appeal is

taken has the effect of a final judgment on the merits."); *Ottaviano v. SEPTA*, 361 A.2d 810, 814

(Pa. Super. 1976).  The question, then, is whether the other requirements of either technical res

judicata or collateral estoppel have been satisfied so as to bar Plaintiff's Counts.

---

[2] The parties agree that Pennsylvania law governs the res judicata analysis.

*i. Collateral Estoppel*

The doctrine of collateral estoppel "prevents parties from litigating again the same issues when a court of competent jurisdiction has already adjudicated the issue on its merits." *Witkowski*, 173 F.3d at 198. Because the arbitration award here constitutes a final judgment on the merits, application of collateral estoppel requires that three additional elements be satisfied: "the issue decided in the prior adjudication must be identical with the one presented in the later action"; "the party against whom collateral estoppel is asserted must have been a party or in privity with the party to the prior adjudication;" and, "the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in the prior adjudication." *Id*. at 199.

Each element of collateral estoppel is satisfied as to Plaintiff's misrepresentation (Count IV) and fraud-based claims (Counts I, III, and V). First, the arbitrator already decided that Defendant committed no fraud and misrepresentation in forming the Brandonville Contract. During the arbitration, Plaintiff argued that the Brandonville Contract was void because "there was not an engineer or architect controlling [his] work." Rejecting this contention, the arbitrator explained:

> The preponderance of evidence suggested that [Plaintiff] negotiated to be relieved of any third party interference with or oversight of how he performed the work. The [Plaintiff's] claims of fraud in the factum and fraud in the inducement have not been supported by any credible evidence and are invalid as a matter of law.

The second element is satisfied because Plaintiff was a party in the arbitration. Lastly, the third element is satisfied, as Plaintiff argued the issue of fraud as it pertained to formation of the Brandonville Contract in the arbitration. Accordingly, collateral estoppel bars Plaintiff's misrepresentation and fraud-based claims, and they shall be dismissed with prejudice.

*ii. Technical Res Judicata*

Technical res judicata extinguishes all of Plaintiff's remaining claims – claims that "should have been litigated" in the arbitration. *See J.S.*, 794 A.2d at 939. Application of technical res judicata requires four elements: "(1) identity of the thing sued upon or for; (2) identity of the causes of action; (3) identity to the persons or parties to the action; and (4) identity of the quality or capacity of the parties being sued." *Id.* The "essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights." *Callery v. Mun. Auth. of Blythe Twp.*, 432 Pa. 307, 387 (1968). Each of the four elements is satisfied.

First, Plaintiff is suing on the same "thing" previously litigated in the arbitration: the contract that he allegedly entered into, under fraudulent pretenses, when he constructed the Brandonville Plant.

Second, Plaintiff could have pressed his various tort, contract, and quasi-contract claims in the arbitration proceeding. As the capacious language of the Brandonville Contract stated, "disputes and matters . . . arising out of or relating to the Contract" were to be decided in arbitration. All of Plaintiff's current claims relate to construction of the Brandonville Plant because they pertain to an allegedly false promise made by Defendant to induce Plaintiff into signing the Brandonville Contract. *See CQ, Inc. v. TXU Mining Co., L.P.*, 2006 WL 278155, at *3 (W.D. Pa. 2006) ("The phrase 'relating to' . . . is broad enough to encompass claims **not explicitly grounded** in the Agreement.'") (internal quotation marks omitted) (emphasis added). Plaintiff's contention that his claims are unrelated to the Brandonville Contract because they turn on alleged misconduct preceding its formation is thus unavailing. Indeed, Plaintiff's remaining claims of promissory estoppel (Count II), unjust enrichment (Count VI), intentional infliction of

emotional distress (Count VII), and breach of the covenant of good faith and fair dealing (Count VIII) are all variations of the fraudulent inducement theme:  Defendant allegedly caused Plaintiff financial and emotional harm by misrepresenting that an engineer would oversee his construction work.

Finally, as to the third and fourth elements, the parties and capacity of the parties to the arbitration and the current lawsuit are identical.

Fundamentally, because Plaintiff could have – but did not – assert the claims in his current Complaint during the arbitration he is prevented from returning to the well in federal court.   Accordingly, his Complaint shall be dismissed with prejudice.

### b.  Rule 11 and Section 1927 Sanctions

Defendant has requested sanctions against Plaintiff under Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 for filing this lawsuit despite (a) the arbitration award and (b) Plaintiff's other similar lawsuits related to the Brandonville Contract filed in state and federal court.

"The legal standard to be applied when evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances, with reasonableness defined as an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact."  *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (internal citations omitted).  Sanctions are warranted only in exceptional circumstances when a claim is "patently unmeritous or frivolous," *id.*, and the "mere failure of a complaint to withstand a motion for summary judgment" is not grounds for Rule 11 sanctions. *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994).

"Section 1927 requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) (internal quotation marks omitted).

Plaintiff shall be required to show cause why Rule 11 and Section 1927 sanctions should not issue given the concerns raised in Defendant's briefing. Plaintiff should also be prepared to explain his failure to mark this case as "related" to a case he removed to the Eastern District of Pennsylvania (*PTS Realty Holdings, LLC v. Stanley Frompovicz*, 17-cv-00319), presided over by the Honorable Nitza I. Quiñones Alejandro, that was ultimately remanded to state court.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

Date: **June 21, 2018**          **WENDY BEETLESTONE, J.**